# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-SA-00340-COA

**THE MISSISSIPPI DEPARTMENT OF WILDLIFE, FISHERIES AND PARKS**                    **APPELLANT**

**v.**

**GAYLON BRADSHAW**                    **APPELLEE**

DATE OF JUDGMENT:                 02/18/2015
TRIAL JUDGE:                      HON. EDDIE H. BOWEN
COURT FROM WHICH APPEALED:        SMITH COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:          WILLIAM DOUGLAS MANN JR.
                                  DOUGLAS DREW MALONE
ATTORNEY FOR APPELLEE:            L. WESLEY BROADHEAD
NATURE OF THE CASE:               CIVIL - STATE BOARDS AND AGENCIES
TRIAL COURT DISPOSITION:          REVERSED AND REMANDED DECISION
                                  OF THE MISSISSIPPI EMPLOYEE
                                  APPEALS BOARD
DISPOSITION:                      REVERSED AND RENDERED - 06/28/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., ISHEE AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1.     The Mississippi Department of Wildlife, Fisheries, and Parks (MDWFP) found that conservation officer Gaylon Bradshaw sent harassing and sexually graphic text messages to a female only a short time after he had been reprimanded and suspended without pay for similar misconduct involving another female. Bradshaw eventually admitted to sending the text messages, and MDWFP terminated him. Bradshaw exercised his right to appeal to the Mississippi Employee Appeals Board (EAB), and the EAB ultimately upheld his dismissal. Bradshaw then appealed to circuit court, the circuit court reversed the EAB's decision, and

MDWFP appealed. For the reasons that follow, we conclude that Bradshaw's termination satisfied due process and that the EAB's decision was supported by substantial evidence and was neither arbitrary nor capricious. Because the circuit court erred by reversing the EAB's decision, we reverse and render the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2.     In May 2013, MDWFP received a complaint that a woman who had participated in an MDWFP hunter education course was receiving harassing text messages from one or more MDWFP employees. Corporal Ben McCurdy admitted that he was one of two MDWFP employees who had sent the text messages. McCurdy sent the woman flirtatious text messages after obtaining her phone number from a form that she completed for the hunter education course. McCurdy told MDWFP investigators that Master Sergeant Gaylon Bradshaw also sent text messages to the woman. McCurdy had asked Bradshaw to contact the woman via text message to ask whether she was interested in McCurdy. Bradshaw admitted that he anonymously sent the woman flirtatious and sexually suggestive text messages. Some of the texts referred to the erotic novel/movie *Fifty Shades of Grey*. Bradshaw also admitted that he sent the woman a picture of his bare torso. The woman did not appreciate McCurdy's and Bradshaw's text messages. She considered them harassment and filed a complaint with MDWFP.

¶3.     On June 19, 2013, MDWFP provided Bradshaw with a Notice of Pre-Disciplinary Conference, which advised him:

> At a minimum, your actions constitute a Group Three Number 12 offense of, "unauthorized use or misuse of State property or records," and may also

2

constitute a Group Three Number 18 offense of, "a breach of agency security or confidentiality," inasmuch as the information contained on the Hunter Education materials is to be used for department business purposes only. Your actions also constitute a Group Three Number 11 offense of, "threatening or coercing employees, supervisors, or **business invitees of a State agency** or office, including **stalking**." [emphasis added]. Finally, taken as a whole, your actions are also a Group Three Number 14 offense of, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such a nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees."

The notice further advised Bradshaw that, pursuant to the Mississippi State Employee Handbook, possible disciplinary action for Group Three offenses included a written reprimand, suspension without pay, demotion, or even dismissal.

¶4. Bradshaw's pre-disciplinary conference was held as scheduled on July 8, 2013. On July 11, 2013, Bradshaw acknowledged receipt of a Notice of Disciplinary Action, in which MDWFP executive director Sam Polles found that Bradshaw was guilty of a Group Three Number 14 offense. For the offense, Bradshaw received a written reprimand and a two-week suspension without pay. Bradshaw did not exercise his right to grieve the disciplinary action.

¶5. In October 2013, an acquaintance of Bradshaw's wife filed a complaint with MDWFP alleging that Bradshaw had sent her a lengthy series of harassing and sexually graphic text messages beginning in May 2013 and continuing into October 2013. The text messages that the woman received were anonymous, although the sender stated that he was someone that she knew. Although the woman repeatedly asked the sender to stop texting her, the sender repeatedly propositioned her in graphic terms and suggested that they exchange revealing pictures of each other. One of the text messages also referenced *Fifty Shades of Grey*. The

woman alleged that the sender eventually called her and told her that they had spoken recently at a particular event and that his initials were "G.B." The woman said that based on this information she knew that the sender was Gaylon Bradshaw. In addition to filing a complaint with MDWFP, she filed an affidavit charging Bradshaw with telephone harassment, a misdemeanor. *See* Miss. Code Ann. § 97-29-45 (Rev. 2014). A justice court case was opened, but the charge was later dropped for unspecified reasons.

¶6. Upon receiving this new complaint, MDWFP immediately suspended Bradshaw without pay based on "extraordinary circumstances." *See* Mississippi State Employee Handbook § 7.2. On October 23, 2013, MDWFP served Bradshaw with a Notice of Pre-Disciplinary Conference, which charged a

> Group Three Number 13 offense of, "an act or acts of conduct, including, but not limited to, the arrest or conviction for a felony or misdemeanor, occurring on or off the job which are plainly related to job performance and are of such a nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees."

Bradshaw was advised that the offense was "of the most serious nature" and could result in a written reprimand, suspension without pay, demotion, or even dismissal.

¶7. A pre-disciplinary conference was set for November 6, 2013, but was continued to November 12, 2013, at Bradshaw's request. At the conference, Bradshaw was represented by legal counsel and signed a waiver of his *Garrity*[1] rights. Bradshaw denied texting or calling the complainant. According to Colonel Steve Adcock, MDWFP chief of law enforcement, Bradshaw claimed that the complainant "had some issues" with his wife

---

[1] *Garrity v. New Jersey*, 385 U.S. 493 (1967).

because his wife knew that the complainant had engaged in an inappropriate relationship with someone else. Bradshaw told the disciplinary panel that the complainant was probably going to drop the criminal charge against him soon. According to Adcock, he and other members of the panel believed that Bradshaw was lying and that he might also be holding something "over [the complainant's] head to make her drop the charges."

¶8. Subsequent to the pre-disciplinary conference, MDWFP directed Bradshaw to submit to a polygraph examination. The agency has a policy requiring employees to submit to such examinations when ordered to do so by the executive director as part of an internal agency investigation. The policy states that the results of a polygraph test may not be used in criminal proceedings but may be admissible in administrative and disciplinary proceedings and related civil appeals. On November 21, 2013, Bradshaw took the polygraph test and again denied sending any inappropriate text messages to the second complainant. The polygraph examiner concluded that Bradshaw was not being truthful.[2]

¶9. After Bradshaw learned of the results of the polygraph examination, he contacted Adcock and requested a meeting with him. When they met, Bradshaw admitted to Adcock that he sent the texts and that the complainant's allegations were true. According to Adcock, "[Bradshaw] basically confessed to the whole thing. He [also said] that his attorney . . . had informed him that he needed to lie at the [pre-disciplinary conference] and that's why he did that." Bradshaw told Adcock "[t]hat he was very sorry" and essentially pled to keep his job.

---

[2] When MDWFP attempted to offer the report of the polygraph examiner into evidence, the hearing officer sustained Bradshaw's objection; however, the hearing officer also noted that Adcock's testimony as to the results of the examination was in evidence.

According to Adcock, Bradshaw also confessed to Major Chris Harris.

¶10.   On February 5, 2014, MDWFP terminated Bradshaw.  The executive director found:

> [Bradshaw's] actions constitute[d] a Group Three Number 14 offense of, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such a nature that to continue [Bradshaw] in [his] assigned position could constitute negligence in regard to the agency's duties to the public or other State employees."

The executive director also found that Bradshaw had lied to his superiors at his initial pre-disciplinary conference, in violation of MDWFP policy.  The executive director emphasized that Bradshaw's conduct was "that much more egregious" because it was the second time in the prior year that he had sent unwanted and sexually suggestive text messages to a female.  Accordingly, MDWFP terminated Bradshaw's employment.

¶11.   Bradshaw appealed his termination to the EAB and requested reinstatement.  A hearing was held before an EAB hearing officer on April 14, 2014.  Adcock and Bradshaw were the only witnesses at the hearing.  Adcock testified that the executive director's decision to terminate Bradshaw was consistent with the disciplinary panel's recommendation.  The panel was especially concerned that Bradshaw's actions reflected "a pattern" and that he had resumed sending harassing text messages almost immediately after he had been disciplined for doing so.  Adcock emphasized that as a law enforcement officer, Bradshaw had "sworn an oath to actually protect people against things like this."  In addition, Bradshaw lied about his actions to his superiors.  Adcock was also concerned that Bradshaw's behavior could result in liability for the agency.

¶12.   When Bradshaw testified, he denied that he sent any text messages to the second

6

complainant. Bradshaw admitted that he previously confessed to Adcock, but he claimed that his confession was a "lie" and only a misguided attempt to keep his job. Bradshaw admitted that he sent text messages to the first complainant, but he claimed that he had no knowledge of how McCurdy had obtained her cell phone number.

¶13. On May 14, 2014, the hearing officer entered an order finding that "Bradshaw did not receive due process" because he was terminated for an offense and conduct other than the offense and conduct identified in his pre-disciplinary notice. Specifically, Bradshaw was charged with a "Group III Number 13 offense" but was terminated for a "Group III Number 14 offense." As set out above, the definitions of these offenses are identical except that the definition of a Number 13 offense includes the additional language "including, but not limited to, the arrest or conviction for a felony or misdemeanor." MDWFP terminated Bradshaw based on a Number 14 offense because the justice court charge was dropped after the agency served Bradshaw with notice of the charges against him. In addition, the hearing officer concluded that Bradshaw was unfairly disciplined for lying to his superiors because he did not receive notice of possible discipline on that basis. Because the hearing officer found that Bradshaw's termination violated "due process," he reversed the agency's decision and ordered Bradshaw reinstated with back pay.

¶14. MDWFP requested review of the hearing officer's decision by the en banc EAB. By a 2–1 vote, the en banc EAB reversed the hearing officer's order and upheld the agency's decision to terminate Bradshaw. The EAB agreed with the hearing officer that the agency should not have terminated Bradshaw for being untruthful because he was not given notice

that he might be disciplined on that basis. However, the EAB concluded that Bradshaw was provided with due process and ample notice of possible discipline for sending harassing and sexually graphic text messages. The EAB reasoned that the conduct for which Bradshaw was terminated "was the same" as that described in his Notice of Pre-Disciplinary Conference. The EAB also emphasized that the definition of a Number 13 offense is practically identical to the definition of a Number 14 offense. Accordingly, the EAB found that the mere "fact that a different number was used in Bradshaw's . . . termination letter does not provide Bradshaw relief and a ground to reverse his termination."

¶15. On the merits, the EAB found that Bradshaw failed to show that his termination was improper. The EAB reasoned that Bradshaw could have been terminated for either a Number 13 offense or a Number 14 offense, as the definition of a Number 13 offense includes but is not limited to conduct that results in an arrest or conviction. Even though the criminal charge against him was dropped, Bradshaw still committed "an act or acts of conduct occurring on or off the job which [were] plainly related to job performance and [were] of such a nature that to continue [him] in [his] assigned position could constitute negligence in regard to the agency's duties to the public or other State employees." The EAB reasoned that Bradshaw's conduct would impair his reputation as a law enforcement officer. The EAB also concluded that Bradshaw's conduct constituted a different crime, namely, attempted adultery in violation of Mississippi Code Annotated section 97-29-1 (Rev. 2014), as both Bradshaw and the complainant were married. The EAB reasoned that Bradshaw had also "solicited [the complainant] to . . . violate" the same statute, and "as a sworn law enforcement officer of the

8

State of Mississippi," Bradshaw had a duty to "enforce the law, not solicit its violation."

¶16.    Bradshaw appealed the EAB's decision to the Smith County Circuit Court.  In his notice of appeal, Bradshaw alleged that MDWFP improperly terminated him for committing a Number 14 offense when he received notice of only a Number 13 offense.  He also alleged that the EAB's decision was "without justification," "arbitrary and capricious," and "against all evidence."  Bradshaw's brief in the circuit court focused solely on his claim that he was denied "due process" because he was terminated for a different offense number than the one cited in his pre-disciplinary notice.  Bradshaw relied exclusively on this Court's then-recent—and since-reversed—decision in *Ray v. Mississippi Department of Public Safety*, 172 So. 3d 199 (Miss. Ct. App. 2014) (*Ray I*), *rev'd* , 172 So. 3d 182 (Miss. 2015) (*Ray II*).[3]

¶17.    On February 18, 2015, the circuit court entered a final judgment reversing the decision of the EAB.  The circuit court stated that "[w]hile MDWFP argues that Bradshaw did admit his actions to his supervisors after he took a polygraph test," there was "no other testimony, other than Colonel Adcock, to verify his admission."  The court found "nothing in the record to suggest [that Bradshaw] admitted to sending the text messages."  The circuit court also rejected the EAB's conclusion that Bradshaw's conduct negatively affected his reputation as a law enforcement officer.  The court reasoned that under the EAB's "rationale, any public official charged with a crime by another would automatically be unfit to perform their duties

---

[3] In *Ray I*, this Court held that a highway patrolman's due process rights were violated because the agency and the EAB relied in part on evidence that he had written twenty or more invalid traffic tickets, whereas the pre-disciplinary charges against him involved stops of only four specific motorists.  *See Ray I*, 172 So. 3d at 206-08 (¶¶24-36).  The Supreme Court disagreed and reversed.  *See Ray II*, 172 So. 3d at 187-91 (¶¶17-34).

9

simply because they were charged." Finally, the circuit court found that the EAB's reliance on the statute criminalizing adultery was "irrelevant" and "inappropriate." For these reasons, the court concluded that the EAB's decision "was not based on substantial evidence, violated Bradshaw's procedural due process rights, and was arbitrary and capricious." MDWFP timely appealed the circuit court's decision. MDWFP argues that the circuit court's decision should be reversed, the EAB's decision should be affirmed, and Bradshaw's termination should be upheld.

## STANDARD OF REVIEW

¶18. A state agency's personnel decisions are entitled to a "presumption of correctness." *Miss. Dep't of Corr. v. Smith*, 883 So. 2d 124, 126 (¶1) (Miss. Ct. App. 2004). "The statute and administrative regulations [governing appeals to the EAB] clearly place the burden of persuasion on the aggrieved employee to demonstrate that the reasons given [for his termination] are not true." *Miss. Dep't of Corr. v. McClee*, 677 So. 2d 732, 735 (Miss. 1996). "This is not mere semantics. Under our scheme, in a nutshell, ties go to the [agency/employer]." *Id.* The EAB is not authorized to reinstate the employee unless the employee carries his burdens of proof and persuasion "that the reasons stated in the notice of dismissal are not true or are not sufficient grounds for the action taken." *Bynum v. Miss. Dep't of Educ.*, 906 So. 2d 81, 90 (¶14) (Miss. Ct. App. 2004).

¶19. If an employee seeks judicial review of an adverse decision of the EAB, "[t]he reviewing court must affirm the [EAB] decision if the decision was (1) supported by substantial evidence; (2) not arbitrary or capricious; (3) within the scope or power of the

10

agency; and (4) not a violation of the aggrieved party's constitutional or statutory rights."
*Ray II*, 172 So. 3d at 187 (¶15); *accord* Miss. Code Ann. § 25-9-132(2) (Rev. 2010). The Supreme "Court has held that 'substantial evidence means evidence which . . . affords a substantial basis of fact from which the fact in issue can be reasonably inferred.'" *Ray II*, 172 So. 3d at 187 (¶16) (quoting *State Oil & Gas Bd. v. Miss. Mineral & Royalty Owners Ass'n*, 258 So. 2d 767, 779 (Miss. 1971)) (brackets omitted). "Substantial evidence exists so long as there is evidence that a reasonable mind might accept as sufficient to support a conclusion." *Id.* "The reviewing court is not authorized to substitute its judgment for that of the [EAB] where there is substantial (that is, more than a scintilla of) evidence to support the finding." *Id.* (quoting *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992)) (brackets omitted). "Moreover, 'there is a rebuttable presumption in favor of the agency decision and the burden of proof is on the party challenging that decision.'" *Id.* (quoting *Montalvo v. Miss. State. Bd. of Med. Licensure*, 671 So. 2d 53, 56 (Miss. 1996)) (brackets omitted). The reviewing court also must bear in mind that "[t]he EAB 'is the trier of fact as well as the judge of the witnesses' credibility.'" *Id.* at 188 (¶20) (quoting *Bynum*, 906 So. 2d at 90 (¶14)). On appeal from a circuit court's decision concerning an agency action, this Court applies the same standard of review as the circuit court. *Pub. Emps' Ret. Sys. v. Marquez*, 774 So. 2d 421, 429 (¶32) (Miss. 2000).

## ANALYSIS

¶20. The basic issues in this appeal are whether the MDWFP's termination of Bradshaw satisfied procedural due process and whether the EAB's decision upholding the termination

11

was either not supported by substantial evidence or was arbitrary and capricious. We address these issues in turn.

## I. Whether Bradshaw Was Denied Due Process

¶21. We first address the question whether Bradshaw was denied due process because he was terminated for a different offense number than the one identified in his Notice of Pre-Disciplinary Conference. Pursuant to Mississippi Code Annotated section 25-9-127(1) (Supp. 2015):

> No employee . . . who is subject to the rules and regulations prescribed by the state personnel system may be dismissed . . . except for inefficiency or other good cause, and after written notice and hearing within the . . . agency . . . as shall be specified in the rules and regulations of the State Personnel Board complying with due process of law . . . .

The rules and regulations of the State Personnel Board provide as follows:

> All permanent State Service employees . . . are entitled to procedural due process of law prior to any employment action to dismiss or otherwise adversely affect their compensation or employment status. The process which is due to each State Service employee is written notice of a proposed disciplinary action *which states with sufficient particularity what charges or allegations are being made concerning the employee*, the proposed discipline which may be taken, and the opportunity for a conference with the appointing authority or designated representative allowing the employee to respond and present a defense to the allegations prior to final action by the appointing authority. The written notice shall be presented to the employee at least seven (7) working days prior to the conference. The employee may also respond in writing to the allegations contained in the written notice.

State Employee Handbook § 7.3 (emphasis added). The same regulation further states:

> The written notice presented to an employee prior to a conference must list all of the reason(s) for the appointing authority's consideration of the adverse action, and the written notice of the appointing authority's final decision to take adverse action must restate all of the reason(s) for the action. *The reason(s) listed in these notices shall be specific by setting forth the particular*

12

*group offense(s) violated and the charge(s) or ground(s) upon which the disciplinary action is predicated.* The reason(s) listed in these notices will be the only reason(s) to be addressed throughout the appeals process.

*Id.* § 7.3(A) (emphasis added).

¶22. Bradshaw contends that he was denied due process of law because MDWFP dismissed him for a Group Three Number 14 offense after giving him notice of potential discipline for a Group Three Number 13 offense. We disagree, as Bradshaw's notice provided him with ample notice of the conduct and the nature of the charge for which he faced discipline.

¶23. As discussed above, the definition of a Number 14 offense is nearly identical to a Number 13 offense. In fact, we can discern no substantive difference between the two. All Group Three offenses are considered "of the most serious nature." *Id.* § 7.1. The definitions of Number 13 offenses and Number 14 offenses both encompass any "act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees." *Id.* The only difference between them is that the definition of a Number 13 offense includes the following additional language after the word "conduct": "including, but not limited to, the arrest or conviction for a felony or misdemeanor." *Id.* Thus, the plain language of the two definitions encompasses the same conduct. The definition of a Number 13 offense is "not limited to" arrests or convictions and thus logically includes some conduct that does not result in an arrest or conviction. Likewise, a Number 14 offense includes any conduct that is "plainly related to job performance and . . . of such a nature that to continue the employee in the

13

position could constitute negligence in regard to the agency's duties"—regardless of whether the conduct results in arrest or conviction. It appears that the latter offense—without the including-but-not-limited-to language—was added to the Employee Handbook in 2013, but the reasons why are not clear. In any event, the two offenses are functionally equivalent and are only worded slightly differently.

¶24. The Supreme "Court has held that agency actions must provide minimum procedural due process, which requires (1) notice and (2) an opportunity to be heard." *Ray II*, 172 So. 3d at 190-91 (¶31). Given the functional equivalence of the two offenses involved, we agree with the EAB that Bradshaw was given fair notice of the nature of the disciplinary charges against him and afforded all process he was due. Moreover, even if the dismissal's citation to a different offense number was "error," the statute authorizing judicial review of Bradshaw's claim specifically provides that "[n]o relief shall be granted based upon the court's finding of harmless error by the [EAB] in complying with the procedural requirements of Section[] 25-9-127," *supra*. Miss. Code Ann. § 25-9-132(3). Any technical error in this case was harmless because Bradshaw had clear notice of the conduct and the nature of the charges for which he was subject to discipline. Therefore, Bradshaw's claim that he was denied due process is without merit.

## II. Whether the EAB's Decision Was Not Supported by Substantial Evidence or Was Arbitrary and Capricious

¶25. We next address Bradshaw's contention that the EAB's decision is not supported by substantial evidence or was arbitrary and capricious. It was Bradshaw's burden to persuade the EAB that the reasons for his dismissal were "not true or . . . not sufficient grounds for the

14

action taken." Miss. Code Ann. § 25-9-127(1). This required Bradshaw to rebut the "presumption of correctness" afforded MDWFP's decision. *Smith*, 883 So. 2d at 126 (¶1). The EAB determined that Bradshaw failed to do so. The only questions for this Court are whether that decision by the EAB was supported by substantial evidence and whether it was arbitrary or capricious. For the reasons discussed below, we conclude that the EAB's decision must be affirmed.

¶26. As a basis for our decision, we do not rely on the EAB's conclusion that Bradshaw was subject to termination for attempting to violate or soliciting a violation of the criminal prohibition on adultery. "There is, in fact, no general crime of adultery." *Saunders v. Alford*, 607 So. 2d 1214, 1219 (Miss. 1992). Except in certain limited situations inapplicable here, "our state prohibits only unlawful 'cohabitation' in 'adultery or fornication.'" *Id.* (quoting Miss Code Ann. § 97-29-1). "[U]nlawful cohabitation . . . requires a showing of more than a single act of adultery. There must be at least an 'habitual concubinage or laying together.'" *Id.* (quoting *Cutrer v. State*, 154 Miss. 80, 121 So. 106 (1929); *Granberry v. State*, 61 Miss. 440 (1884)). The evidence did not establish that Bradshaw was attempting to cohabit with the second complainant. Nor are we prepared to say that a law enforcement officer's unsuccessful attempt at adultery is, without more, grounds for termination.

¶27. We next address the circuit court's conclusion that there was insufficient evidence that Bradshaw sent text messages to the second complainant. As noted above, the circuit court stated that "[w]hile MDWFP argues that Bradshaw did admit his actions to his supervisors after he took a polygraph test," there was "no other testimony, other than Colonel Adcock,

15

to verify his admission." The circuit court also stated that there was "nothing in the record to suggest [that Bradshaw] admitted to sending the text messages." However, before the EAB hearing officer, Bradshaw acknowledged that he had previously admitted to Adcock that he sent the text messages—although he claimed the admission was a "lie" that he told only in an attempt to save his job. "[R]ecanted or not," Bradshaw's prior admission that he sent the text messages is "direct evidence" that he sent the text messages. *States v. State*, 88 So. 3d 749, 757 (¶34) (Miss. 2012). It is also sufficient evidence to support the EAB's factual finding that Bradshaw sent the text messages. The EAB—not the circuit court or this Court—"is the trier of fact as well as the judge of the witnesses' credibility." *Bynum*, 906 So. 2d at 90 (¶14). Accordingly, it was for the EAB to decide whether to believe Bradshaw's confession or his subsequent recantation.

¶28. Finally, we affirm the EAB's ruling that Bradshaw's misconduct was "sufficient grounds for the action taken." Miss. Code Ann. § 25-9-127(1). The EAB found that Bradshaw committed "an act or acts of conduct . . . on or off the job [that were] plainly related to job performance and [were] of such nature that to continue [Bradshaw] in [his] assigned position could constitute negligence in regard to [MDWFP's] duties to the public or to other State employees." State Employee Handbook § 7.1. We affirm this finding because it is supported by substantial evidence, and it is neither arbitrary nor capricious.

¶29. Only four months earlier, MDWFP had disciplined Bradshaw for sending unwanted and inappropriate text messages to a female whose cell phone number had been obtained from hunter education paperwork. Bradshaw thus intentionally harassed a member of the

16

core constituency that MDWFP has a duty to serve. His conduct was "plainly related to job performance." MDWFP found that, despite being reprimanded and suspended for his actions, Bradshaw continued to engage in similar and, indeed, more aggressive misconduct. Although Bradshaw's contact with the second complainant was not work-related, the EAB's decision to uphold his termination was neither arbitrary nor capricious. Bradshaw had already shown that his continued employment "could constitute negligence in regard to [MDWFP's] duties to the public or to other State employees." *Id.* MDWFP's and the EAB's finding that he continued to engage in such misconduct undeterred supports their further conclusion that Bradshaw was an unacceptable risk to the public and the agency. Moreover, MDWFP and the EAB reasonably concluded that Bradshaw's pattern of misconduct was inconsistent with his duties and impaired his reputation as a sworn law enforcement officer. *See Miss. Bureau of Narcotics v. Stacy*, 817 So. 2d 523, 525-28 (¶¶2-18) (Miss. 2002) (affirming the EAB's decision upholding the termination of a narcotics agent based on his simple assault on his wife's parents); *Miss. Dep't of Corr. v. Corley*, 769 So. 2d 866, 869-70 (¶¶19-20) (Miss. Ct. App. 2000) (holding that agency permissibly terminated law enforcement officer based on his possession and use of marijuana). Accordingly, in light of the factual findings of MDWFP and the EAB, we conclude that the EAB's decision is supported by substantial evidence, is neither arbitrary nor capricious, and must be affirmed.

## CONCLUSION

¶30. Bradshaw was provided sufficient notice and due process in his disciplinary proceeding, and the EAB's decision upholding his termination was supported by substantial

17

evidence and was neither arbitrary nor capricious. Accordingly, the circuit court's judgment

is reversed and rendered, and the decision of the EAB is affirmed in full.

¶31. **THE JUDGMENT OF THE SMITH COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR.**