# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CC-00459-COA

**RHONDA BOYD**                                                                                          **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                                              **APPELLEE**
**CORRECTIONS**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/2021 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | FRANCIS STARR SPRINGER |
| ATTORNEY FOR APPELLEE: | COURTNEY ELEASE COCKRELL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.

### BARNES, C.J., FOR THE COURT:

¶1. On September 29, 2018, two Brookhaven police officers were killed in the line of duty by a Mississippi Department of Corrections (MDOC) probationer, Marquis Flowers. Upon investigation, it was discovered that the MDOC had failed to issue an arrest warrant for Flowers after he did not report to his assigned probation office in Lincoln County upon being released from MDOC custody months previously. The MDOC determined that the Community Corrections Associate Director (CCAD) for that area, Rhonda Boyd, was directly responsible for the oversight. Boyd was demoted, with a corresponding reduction in pay, and was considered ineligible for promotion for twelve months.

¶2.     Boyd appealed the decision to the Mississippi Employee Appeals Board (EAB), which affirmed the MDOC's disciplinary action. Boyd filed a subsequent appeal with the Hinds County Circuit Court. On March 31, 2021, the circuit court affirmed the EAB's decision. Aggrieved, Boyd appeals. We find no error and affirm.

**FACTUAL SUMMARY**

¶3.     In October 2017, Flowers was transported to the Adams County Jail. A month later, the MDOC assigned Flowers to the Lincoln County "100 caseload," which was supervised by Boyd.[1] On May 7, 2018, Beverly Porter—a Special Projects Officer and Boyd's assistant—emailed Agent Kennis Montgomery and Agent James Walker, notifying them that "[Flowers] has 8 months GPS upon release from [d]etainer. He was finally released from Adams [County Jail] on 5/3. To my recollection, he has not reported." Boyd and Jewel Simmons-Bond, an MDOC Probation/Parole Agent Supervisor (PPAS) in Boyd's assigned region,[2] were copied on that email.

¶4.     On June 18, 2018, Simmons-Bond sent an email to probation agents in her region, including Agent Montgomery, asking them to "take some time and get offenders off of

---

[1] The record indicates that a "100 caseload" is where offenders are listed who have not been assigned an agent. Further, "[w]hen an offender is released from MDOC custody, [the] offender data management system changes the location of the offender from the MDOC housing facility to reflect the county where the offender will be released." Although Flowers initially was assigned to Adams County, it was subsequently determined he would reside in Lincoln County, so he was reassigned to Lincoln County in November 2017.

[2] There is some dispute as to whether Simmons-Bond was assigned to Lincoln County when the incident occurred. Boyd admitted that Simmons-Bond "only supervised Pike and Walthall Counties," but she claimed that she asked Simmons-Bond to assist her with Lincoln County. However, the MDOC organizational chart admitted into evidence did not reflect that change.

Lincoln 100." If they were unable to locate an offender, they were instructed to "please obtain a warrant and place on warrant caseload." Simultaneously, Boyd emailed Agent Montgomery with a list of five "offenders" on the Lincoln 100 caseload, which included Flowers. The email indicated Flowers had been released from custody on May 3. An hour later, Boyd also emailed several MDOC personnel, including Simmons-Bond and Agent Montgomery, asking them to "check on the 100 caseloads and make sure that someone is not on there and unattended." Simmons-Bond responded to Boyd, "Great minds think alike, I've been working on them today." Boyd replied, "Yes I have seen a lot that needs to be moved or checked on!" On July 3, 2018, Boyd emailed Agent Montgomery with Flowers's information and inquired if he had located Flowers for intake. The email noted that she had previously emailed the agent on June 18 "to check on" Flowers.[3] However, Agent Montgomery failed to document the attempt in the case system or notify Boyd or Simmons-Bond immediately after his attempt.

¶5. On September 29, 2018, Flowers shot and killed two police officers responding to a "shots fired" call. Several days after the police officers' deaths, Boyd sent an email to Christy Gutherz, the MDOC's Deputy Commissioner of Community Corrections, on October 9, 2018. The email noted that Agent Montgomery had attempted to find Flowers on June 19, but no one was home, so he left his business card. After another email from Simmons-Bond in July, Agent Montgomery went to the home a second time; again, no one was home. Boyd

---

[3] On January 22, 2018, an Adams County grand jury indicted Flowers for several counts of car theft and burglary of an automobile. The Adams County Circuit Court issued a bench warrant for Flowers on August 6, 2018, for failure to appear.

acknowledged in the October 9 email, "I should have been notified and we should have issued a warrant for this offender for failure to report." That same day, Deputy Gutherz disseminated a memo, directing that the "PPAS and CCAD should have all assigned 100 caseloads in their names, and they are responsible for a 5 calendar [day] assignment of cases to Agents for supervision." This revision to the "internal policies and practices" was to be immediately implemented.

## PROCEDURAL HISTORY

¶6.     The MDOC issued a notice of suspension with pay pending an investigation to Boyd, Simmons-Bond, and Agent Montgomery on October 31, 2018. Boyd's notice stated that she had "failed to either assign the Flowers case for supervision in June 2018, or instruct PPAS [Simmons-Bond] to make the caseload assignment." Simmons-Bond responded to her notice on November 5, asserting that Boyd "was assigned this caseload" under MDOC protocol, and that "[a]t no time was Lincoln 100 caseload assigned to myself or anyone else[.]"[4] No disciplinary action was taken against Simmons-Bond.

¶7.     On January 16, 2019, the MDOC notified Boyd that she was being demoted from CCAD to PPAS and would receive a corresponding reduction in pay. Boyd would also be ineligible to receive a promotion for twelve months. Challenging the MDOC's decision, Boyd filed an appeal with the EAB.

¶8.     A hearing before the EAB hearing officer was held on April 25, 2019. Boyd testified that her duties as CCAD were "[t]o supervise the agents and the PPAS in Pike [County],

_____

        [4] Simmons-Bond's response also noted that it was not until October 8, 2018, that Boyd assigned her the 100 caseloads for Pike, Lincoln, and Walthall counties.

4

Lincoln [County], Walthall [County], Adams County, Amite County, Franklin County[,] and Wilkinson County." Although she claimed that Simmons-Bond "monitored th[e] caseload [100]" for Lincoln County, Boyd acknowledged that it was her own name that was on the caseload in the system.

> Q. Was [Flowers's] case or the Lincoln cases, were they ever assigned to Jewel Simmons-Bond prior to the incident?
>
> A. No.
>
> Q. So it was always in your name?
>
> A. Right.

Nevertheless, she maintained that it was Simmons-Bond's responsibility to assign the agent to a case. When asked, "who made that directive that the PPAS was supposed to make the assignment?" Boyd replied, "It was understood. I thought it was understood."

¶9. Boyd said she "spoke with Agent Montgomery after he did the home visit [on Flowers] on the 19th, . . . [a]nd [she] told him that he needed to make sure that he kept an eye on that and, yeah, get [Flowers] in so that he could get him hooked up [for monitoring]." She again insisted that it was Simmons-Bond's responsibility to handle the Lincoln County caseloads. She admitted that a warrant should have been issued for Flowers's arrest.

¶10. Simmons-Bond testified that it was Boyd's "responsibility" to assign an offender to an agent's caseload, as the "Lincoln 100 was assigned to [Boyd]." Simmons-Bond said that she merely assisted Boyd with Lincoln County.

> Q. Okay. So what do you say to the allegation that you were supposed to handle this case?

A.  I've never been assigned those caseloads. And per the directive, it was not my responsibility.

Q.  And when you say you were never assigned those caseloads, tell me what you mean by that.

A.  Physically, the caseload was never put in my name.

Q.  Okay. Whose name was it in or is it in?

A.  It was in Ms. Boyd's.

Simmons-Bond acknowledged that after the Flowers incident, the caseload was moved to her name. But she maintained that the person responsible for assigning Flowers to an agent under MDOC policy was Boyd, the CCAD.

¶11. Deputy Gutherz testified that her position entailed "general oversight of all aspects of community corrections[.]" She stated that Boyd supervised seven counties, including Lincoln County, whereas the PPAS was "responsible for a judicial district[,] . . . [which] in this case . . . would have been Walthall, Lincoln and Pike." Thus, Deputy Gutherz initially assumed that Simmons-Bond "was responsible for those counties in that particular judicial district," but later "became aware that [Simmons-Bond] did not have any responsibilities with Lincoln County." Deputy Gutherz asserted that, in this case, "Boyd maintained the responsibility for manning all of the 100 caseloads in her area." When asked if the email that Boyd sent to Agent Montgomery on June 18, 2018, was sufficient to assign the case to the agent, Deputy Gutherz testified, "No. Assignments happen when the case actually moves from a 100 caseload to a caseload number in that county that's tied to that particular agent."

¶12. Juanita Barber, MDOC personnel office director, testified that Boyd had her attorney

present for the pre-disciplinary conference and had "admit[ted] that she did not check on [Agent] Montgomery to see if he had done what he was supposed to do, and that was to check on the offender." She stated that "[t]he last thing [she] remember[ed] was that Ms. Boyd admitted to being responsible." Crystal Galloway, the MDOC hearing officer, testified that Boyd's demotion was warranted "[b]ecause she . . . failed to ensure that the offender was assigned like he should have been." She noted that Boyd would be eligible to reapply for a CCAD position after twelve months. Although she acknowledged that Boyd had no prior disciplinary issues, Galloway explained that the seriousness of the tragedy that had occurred "kind of demanded that . . . the discipline be significant." Galloway also noted that Agent Montgomery received a written reprimand and that Simmons-Bond had submitted documents in response to her notice.

¶13. Boyd testified as a rebuttal witness. She claimed that Deputy Gutherz had approved her assigning Simmons-Bond to Lincoln County in order to assist Boyd while she was busy with other duties.

¶14. On June 28, 2019, the EAB affirmed the MDOC's disciplinary actions, finding that Boyd had "not met her burden to overturn the one year suspension." Boyd filed an appeal with the circuit court, which affirmed the EAB's ruling on March 31, 2021. The court found "that there was substantial evidence to support the decision of the Board, that the decision of the Board was not arbitrary or capricious, that the finding was not beyond the scope of the Board and that the decision did not violate any constitutional right of the Appellant."

¶15. Boyd appeals, arguing that the MDOC's disciplinary actions were not supported by

the evidence and that the EAB's decision was based on hearsay and violated her constitutional right to confront witnesses against her.

## STANDARD OF REVIEW

¶16.    In reviewing an appeal from a state agency's termination of an employee, this Court has held:

> A state agency's personnel decisions are entitled to a "presumption of correctness." *Miss. Dep't of Corr. v. Smith*, 883 So. 2d 124, 126 (¶1) (Miss. Ct. App. 2004). "The statute and administrative regulations governing appeals to the EAB clearly place the burden of persuasion on the aggrieved employee to demonstrate that the reasons given for his termination are not true." *Miss. Dep't of Corr. v. McClee*, 677 So. 2d 732, 735 (Miss. 1996). "This is not mere semantics. Under our scheme, in a nutshell, ties go to the agency/employer." *Id*. The EAB is not authorized to reinstate the employee unless the employee carries his burdens of proof and persuasion "that the reasons stated in the notice of dismissal are not true or are not sufficient grounds for the action taken." *Bynum v. Miss. Dep't of Educ.*, 906 So. 2d 81, 90 (¶14) (Miss. Ct. App. 2004).

*Miss. Dep't of Wildlife, Fisheries & Parks v. Bradshaw*, 196 So. 3d 1075, 1082 (¶18) (Miss. Ct. App. 2016).[5]

## DISCUSSION

### I.    Whether Boyd failed to overcome the presumption that the MDOC's disciplinary action was correct.

¶17.    Boyd contends that there was insufficient evidence to support the MDOC's decision to demote her. Specifically, she notes that both she and Simmons-Bond were cited for the

---

[5] While the cited cases concern a state agency's termination of an employee, the same standard of review is applicable to other administrative personnel decisions. *See, e.g., Richmond v. Miss. Dep't of Human Res.*, 745 So. 2d 254, 258 (¶14) (Miss. 1999) (holding that unless the employee "demonstrate[s] the reasons given are not true . . . the employee has no right to have the *employment decision* overturned") (emphasis added).

8

same disciplinary infractions; yet, Simmons-Bond's discipline was "inexplicably rescinded." Thus, she claims that her demotion was "arbitrary and capricious."

¶18.   While "conced[ing]" that it was initially thought that "Simmons-Bond was just as responsible" for Flowers's assignment, the MDOC explained that Simmons-Bond had "refuted the allegations against her by submitting overwhelming documentation, including the agency organizational chart and an email from the deputy commissioner specifically detailing her level of responsibility." Further, Simmons-Bond met with the MDOC's attorney and disciplinary compliance director and "was informed that based on a review of the documents she [had] submitted[,] it was determined that there was no evidence to pursue discipline against her and the investigation into her actions was concluded." We therefore find no merit to Boyd's claim that the MDOC's failure to discipline Simmons-Bond was "without explanation."

¶19.   Boyd also argues that "[t]he record clearly indicates that [she] did not violate MDOC policy" and that her testimony "that she did nothing wrong successfully rebutted" the presumption that she violated MDOC policy. When asked by Boyd's counsel to cite the MDOC policies that Boyd violated, Deputy Gutherz responded that Boyd "failed to provide a statement (inaudible) the offender had absconded supervision."[6] Deputy Gutherz admitted

---

[6] MDOC Standard Operating Procedures 37-11-01 provides:

When an Agent has determined that the offender has left his approved area of supervision or the Probation/Parole Agent has been unable to locate said offender for sixty (60) days the Probation/Parole Agent will identify the offender as an absconder and will complete all necessary paperwork to begin revocation proceedings and to place the offender on the National Crime Information Center (NCIC).

9

that the policy in question states that it is the "P&P agent," which in this case was Agent Montgomery, who was to complete the violation report, not the CCAD. And she did concede that the policy listed in the disciplinary notice, as applied to Boyd, was "incorrect." But Deputy Gutherz also testified:

> And as I was saying, the case was still assigned to Rhonda Boyd at that time, so she was the person that was responsible for that. Now, granted she's not an agent. But the case is assigned to her at that point in time, so she becomes responsible for handling that case.

Boyd acknowledged that she bore responsibility for assigning Flowers to an agent.

¶20. Furthermore, as the MDOC notes, Boyd "was not solely disciplined for violating MDOC policy[;] she was also disciplined for violating Group 3, Number 14 of the [Mississippi State Personnel Board Policies and Procedures Manual]," for which an employee "may be disciplined by the agency with a written reprimand and/or may result in suspension without pay for up to thirty working days, demotion, or dismissal." Specifically, the offense encompasses:

> [a]n act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees[.]

Affording the MDOC the required "presumption of correctness" in its decision, we find Boyd has failed to meet her "burdens of proof and persuasion" that there was "not sufficient grounds for the action taken." *See Bradshaw*, 196 So. 3d at 1082 (¶18).

## II. Whether the EAB's decision was based on hearsay and violated the Confrontation Clause.

¶21. In the EAB's order, the hearing officer noted that Agent Montgomery "provided a

10

rational explanation why he did not document his visits in the system—he was not assigned this matter." Boyd contends that the EAB's reference to Agent Montgomery's testimony constituted "uncorroborated hearsay" because Agent Montgomery was not a witness at her EAB hearing.

¶22. According to Boyd, this "explanation" by Agent Montgomery originated from his disciplinary hearing, which has not been made part of the record in this case. Thus, the issue is not whether the agent's testimony was "uncorroborated hearsay" but whether the EAB relied on evidence not presented at Boyd's hearing. The Mississippi Supreme Court has held, "Although an administrative agency may act upon information obtained by its own investigation, . . . where a hearing is required by law, administrative adjudication must be based upon evidence adduced at the hearing and not upon secret knowledge of the agency." *Miss. State Bd. of Examiners for Soc. Workers & Marriage & Fam. Therapists v. Anderson*, 757 So. 2d 1079, 1085 (¶19) (Miss. Ct. App. 2000). Nevertheless, despite Boyd's argument to the contrary, we find the EAB's decision was not "influenced" by Agent Montgomery's testimony. Rather, the EAB was merely commenting on Agent Montgomery's reasoning for his failure to document his visits to Flowers's residence. Therefore, any error in the EAB's passing reference to Agent Montgomery's "explanation" would be harmless.

¶23. Boyd also argues that the EAB's reference to Agent Montgomery's "prejudicial statement" in its order was a violation of her right to confront witnesses under the Sixth Amendment's Confrontation Clause. To support her argument, Boyd cites one non-binding case, *McNeill v. Butz*, 480 F.2d 314, 325 (4th Cir. 1973), in which the United States Court

of Appeals for the Fourth Circuit held that the inability for the discharged federal employee to cross-examine the government's witnesses against him was a violation of procedural due process. *McNeill*, however, concerned "investigative reports, which related the hearsay statements of nameless informers whom [the employee] could not confront or cross-examine." *Id*. at 326. In contrast, Boyd knew Agent Montgomery and had the opportunity to call him as a witness at the hearing.

¶24. Moreover, the Sixth Amendment provides that "[i]n all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (Emphasis added); *see also* Miss. Const. art. 3, § 26; *Austin v. United States*, 509 U.S. 602, 608 (1993) (holding that "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions'"). The Mississippi Supreme Court has thus recognized that "[b]y its own language, the Confrontation Clause extends only to criminal cases." *Miller v. Smith*, 229 So. 3d 100, 105 (¶20) (Miss. 2017). Because the proceeding in this case was not a "criminal prosecution," but a disciplinary proceeding before an administrative agency, we find no merit to Boyd's argument. Accordingly, we affirm the MDOC's decision.

¶25. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**